By the Court:

Barbour, C. J.
Evidence was given upon the trial sufficient, if credited by the jury, to establish the following facts, viz.:
First.—In May or June, 1864, the defendant called at the store of the plaintiffs, and then told them that he had a big thing for them, an oil company, called The New York and Pennsylvania Oil Company; that he had a few shares for his most intimate friends, and wished to give some of it to the plaintiffs; that the company owned some two hundred acres of land in fee, with a lease of other lands; that they had purchased and paid for twenty-eight engines, with sufficient tools and implements to put down the wells; that the wells were then going down; that they had everything that was necessary to put down the wells, and he *465 thought that by the first of January they would have fifty wells down; that the plaintiffs need not hesitate to take the stock as he had examined into the thing thoroughly and knew it was all right; and if they subscribed they would have their stock upon the same terms that he had Ms.
Second.—That the plaintiffs were induced by those representations to, and they then did, subscribe for 2,000 shares of the stock, and subsequently, and on the 12th of July, 1864, by direction of the defendant, paid $6,000 therefor to the secretary of the company.
I do not find that either of the plaintiffs testified, directly, that he was induced to subscribe by the representations. But as they both testified that they had no knowledge whatever respecting even the existence of the company, except such as they obtained from the defendant at that time, the conclusion that such representations induced them to subscribe as they then did, is irresistible. Indeed, as evidence, it is all that could have been given before the admission of parties as witnesses, and I think it is entitled to greater credit as proof of the fact, than would be the unsupported declaration of each as to the workings of his own mind.
Third.—When those representations were made by the defendant they were literally untrue in every particular, as the company was then wholly unorganized, and no conveyance whatever had yet been made to it. And even if the jury had arrived at the conclusion that the defendant intended to be understood as speaMng of the property wMch was covered by the arrangement that had been made between Underhill and Holley, and which was to belong to the company when organized, the evidence before them was sufficient to justify a finding that most of the material statements and representations so made by the defendant to the plaintiffs were false.
For instance: It clearly appears from the testimony of Holley and others, that the subject of the arrangement between himself and Underhill was land and nothing else. Ho engines, machinery, or tools were included in that arrangement with Under- *466 hill, nor, eventually, in his conveyance; nor had any wells been commenced upon the land purchased prior to its conveyance to the company. Indeed, the company never had more than five engines upon the property, and they were sent there by the company with the tools after its organization. The jury, therefore, would probably have found, had the question been submitted to them, that the defendant’s representation that the company owned twenty-eight engines, with the necessary tools, machinery, and implements for sinking fifty wells, etc, was false and fraudulent; and as each engine would cost some $1,500, and the representation, moreover, was such an one as was calculated to induce the belief that the company was at work, with all the necessary materials for obtaining oil at an early day, instead of being mere owners of tracts of land, the materiality of the representation in this regard is easily perceived. The representation of the defendant, too, touching his own interest in the company was no less important, and the jury might well have found from the testimony that it was equally untrue.
It is not very important, perhaps, to inquire whether the evidence before the jury was sufficient to prove that the defendant expected to be in any way benefited, personally, by the plaintiffs’ subscription for stock, or the payment to be made by them therefor. I am satisfied, however, that, considering the relation he 'occupied toward the contemplated company, and the part he took with Holley in obtaining subscriptions and getting it up, 'the jury might properly have found that he had a direct personal interest in procuring the subscription of the plaintiff by the means he employed.
Assuming, then, as I think we may, that there «was evidence before the jury which was sufficient, if credited by them, to 'authorize the finding of those facts, the conclusion that the learned justice erred in withdrawing the case from their consideration, and directing a verdict, follows as a matter of ■course.
The judgment should be reversed, with costs, and a new trial awarded.